Clark, J.
Appeal from an order of the Family Court of Clinton County (Lawliss, J.), entered January 17, 2013, which granted petitioner’s application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be the child of a mentally ill and/or mentally retarded parent, and terminated respondent’s parental rights.
Respondent is the father of a child (born in 2011) who was placed in petitioner’s care very shortly after his birth. In July 2012, petitioner commenced the instant proceeding against respondent seeking to terminate his parental rights and alleging concerns over respondent’s limited parenting ability due to his mental retardation and mental illness.* Following a fact-finding hearing, Family Court sustained the allegations of the petition and terminated respondent’s parental rights. Respondent now appeals.
We affirm. To support a termination of parental rights on the grounds of mental illness or mental retardation, the petitioning agency “must show, by clear and convincing evidence, that the parent is presently, and will continue for the foreseeable future to be, unable to provide proper and adequate care for the child[ ] by reason of the parent’s mental illness” or mental retardation (Matter of Burton C. [Marcy C.], 91 AD3d 1038, 1039 [2012] [internal quotation marks and citations omitted]; see Social Services Law § 384-b [3] [g]; [4] [c]). In order to meet its burden, *1011 the petitioner is required not only to provide proof of the parent’s underlying condition, but must also elicit “ ‘testimony from appropriate medical witnesses particularizing how the parent’s mental illness affects his or her present and future ability to care for the child’ ” (Matter of Karen GG. [Marline HH.], 72 AD3d 1156, 1158 [2010], lv denied 14 NY3d 713 [2010], quoting Matter of Robert XX., 290 AD2d 753, 754 [2002]; accord Matter of Dakota F. [Angela F.], 110 AD3d 1151, 1154 [2013], lv denied 22 NY3d 1015 [2013]).
Here, petitioner presented the testimony of Richard Liotta, a psychologist who had, among other things, interviewed respondent and administered psychological testing. Based on his interview with respondent, his review of relevant historical and collateral documents and the results of the IQ tests, Liotta opined that respondent was “mental[ly] retard[ed]” within the meaning of the statute (Social Services Law § 384-b [6] [b]). Liotta also found that respondent suffered from “mental illness” (Social Services Law § 384-b [6] [a]), and diagnosed him with impulse control disorder not otherwise specified and antisocial personality disorder. Liotta concluded that respondent’s mental illness, coupled with his mental retardation, rendered him unable to adequately parent the child now and for the foreseeable future. Specifically, Liotta testified that, based upon respondent’s difficulty in complying with treatment thus far, the likelihood of his benefitting from medication or therapy treatment to address his issues was very low.
Foster care homemaker Shirley LeBlanc further testified that she had been working with respondent for approximately 20 months on various parenting skills as the supervisor of his visits with the child. LeBlanc explained that, over time, she saw no improvement in his parenting ability. In that regard, LeBlanc stated that respondent refused to comply with her suggestions and continued to struggle with anger problems, citing numerous instances where he lost his temper and exhibited troubling behaviors in front of the child.
In the absence of any contradictory expert evidence, and with due deference to Family Court’s factual and credibility determinations, we find that the court’s determination is supported by clear and convincing evidence (see Matter of Burton C. [Marcy C.], 91 AD3d at 1039-1041; Matter of Karen GG. [Marline HH.], 72 AD3d at 1158-1159; Matter of Anna V., 23 AD3d 975, 976-977 [2005], lv denied 6 NY3d 710 [2006]). Respondent’s remaining arguments have been examined and found to be without merit.
Peters, PJ., Garry, Rose and Egan Jr., JJ., concur.
Ordered that the order is affirmed, without costs.

 The biological mother surrendered her rights to the child in February 2012.